UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

**TIMOTHY M. GILFUS, MICHAEL P. GILFUS,**
**DANIEL J. GILFUS, LISA L. GILFUS,**
**JENNIFER L. SWAN, EDWARD R. HASKIN,**

                Plaintiffs,

      v.                                    5:04-CV-1379 (HGM/DEP)

**DISTRICT ATTORNEY JAMES VARGASON;**
**ADA DIANE ADSIT, FOUNDER & TREASURER, "Feral**
**Cat Friends, Inc.," individually & in her official capacity;**
**CAYUGA COUNTY, NEW YORK SHERIFF MICHAEL**
**LUPO, CAYUGA COUNTY, NEW YORK SHERIFF'S**
**DEPARTMENT, JOHN & JANE DOES, THOMAS**
**ADESSA; FINGER LAKES SOCIETY FOR THE**
**PREVENTION OF CRUELTY TO ANIMALS OF**
**CENTRAL NEW YORK, A/K/A CAYUGA COUNTY**
**SOCIETY FOR THE PREVENTION OF CRUELTY**
**TO ANIMALS, INC., A/K/A FINGER LAKES SPCA,**
**A/K/A CAYUGA COUNTY SPCA, A/K/A FINGER**
**LAKES SPCA OF CENTRAL NEW YORK, JOHN &**
**JANE DOES; THE HUMANE SOCIETY OF**
**ROCHESTER & MONROE COUNTY FOR THE**
**PREVENTION OF CRUELTY TO ANIMALS, INC.,**
**A/K/A HUMANE SOCIETY OF ROCHESTER &**
**MONROE COUNTY, A/K/A HUMANE SOCIETY AT**
**LOLLYPOP FARM, A/K/A THE HUMANE SOCIETY**
**OF ROCHESTER AND MONROE COUNTY AT**
**LOLLYPOP FARM, A/K/A LOLLYPOP FARM WEST,**
**A/K/A LOLLYPOP FARM, A/K/A HUMANE SOCIETY**
**OF ROCHESTER, JOHN & JANE DOES; CENTRAL**
**NEW YORK SOCIETY FOR THE PREVENTION**
**OF CRUELTY TO ANIMALS, A/K/A ONONDAGA**
**SPCA; JOHN & JANE DOES; ASPCA SPECIAL**
**INVESTIGATOR ANNE MARIE LUCAS; ASPCA**
**SPECIAL AGENT JOANNE SANDANO, AND JOHN**
**AND JANE DOES,**

                Defendants.[1]

─────────────────────────────────────────

──────────────────

[1]The Court has deleted from the case caption Plaintiffs' reiteration of those "a/k/a" Defendants who appear twice for the same named Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

TIMOTHY GILFUS
Plaintiff *pro se*
Post Office Box 53
1996 Sarr Road
Port Byron, NY 13140

MICHAEL P. GILFUS
Plaintiff *pro se*
Post Office Box 53
1996 Sarr Road
Port Byron, NY 13140

DANIEL GILFUS
Plaintiff *pro se*
Post Office Box 53
1996 Sarr Road
Port Byron, NY 13140

LISA L. GILFUS
Plaintiff *pro se*
Post Office Box 53
1996 Sarr Road
Port Byron, NY 13140

JENNIFER L. SWAN
Plaintiff *pro se*
Post Office Box 53
1996 Sarr Road
Port Byron, NY 13140

EDWARD R. HASKIN
Plaintiff *pro se*
Post Office Box 53
1996 Sarr Road
Port Byron, NY 13140

JAMES VARGASON
Defendant

DIANE ADSIT
Defendant

CAYUGA COUNTY NEW YORK
DISTRICT ATTORNEY'S OFFICE

Defendant

ROBERT OUTHOUSE
Defendant

PAUL BENTON
Defendant

MICHAEL LUPO
Defendant

JOHN & JANE DOES
Defendants

THOMAS ADESSA
Defendant

FINGER LAKES SOCIETY FOR THE
PREVENTION OF CRUELTY TO ANIMALS
OF CENTRAL NEW YORK
Defendant

HARRIS, CHESWORTH, O'BRIEN, JOHNSTONE,        MICHAEL P. LEONE, ESQ.
WELCH & LEONE, LLP
Attorneys for Defendant Humane Society of
Rochester & Monroe County for the Prevention
of Cruelty to Animals, Inc.
300 Linden Oaks
Rochester, New York 14625

SMITH, SOVIK, KENDRICK & SUGNET, P.C.        PATRICK B. SARDINO, ESQ.
Attorneys for Defendant Central New York        GABRIELLE M. HOPE, ESQ.
Society for the Prevention of Cruelty to Animals
250 South Clinton Street
Suite 600
Syracuse, New York 13202-1252

ANNE MARIE LUCAS
Defendant

JOANNE SANDANO
Defendant

**HOWARD G. MUNSON**
**Senior United States District Judge**

## MEMORANDUM - DECISION AND ORDER

On November 29, 2004, Plaintiffs, Timothy M. Gilfus, Michael P. Gilfus, Lisa L. Gilfus, Jennifer L. Swan, and Edward R. Haskin, filed a Complaint against Defendants James Vargason; Diane Adsit, the Cayuga County District Attorney's Office; Robert Outhouse; Paul Benton; Michael Lupo; John and Jane Does; Thomas Adessa; Finger Lakes Society for the Prevention of Cruelty to Animals of Central New York; the Humane Society of Rochester & Monroe County for the Prevention of Cruelty to Animals, Inc. (the "Humane Society"), which for purposes of this opinion includes the Humane Society of Rochester & Monroe County, the Humane Society at Lollypop Farm, the Humane Society of Rochester and Monroe County at Lollypop Farm, Lollypop Farm West, Humane Society at Lollypop Farm, the Humane Society of Rochester, and John and Jane Does; the Central New York Society for the Prevention of Cruelty to Animals ("CNY SPCA"), which for purposes of this opinion includes the Onondaga SPCA; Anne Marie Lucas; and Joanne Sandano ("Defendants"). Plaintiffs filed this action while an inextricably related action, 5:03-CV-578, was pending before this Court. Currently pending before the Court are two motions to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, *see* Dkt. No 10, Notice of Mot.; Dkt. No. 13, Notice of Mot., filed by Defendants, the CNY SPCA and the Humane Society, respectively. For the reasons following below, the Court GRANTS the CNY SPCA's and Humane Society's motions and DISMISSES Plaintiffs' action in its entirety.

## BACKGROUND

As the Court will discuss below, this action shares all too much in common with a predecessor civil action: 5:03-CV-578.[2] Plaintiffs' Complaint alleges that on the morning of December 1, 2001, Cayuga County law enforcement officials, supervised by Cayuga County

---

[2]The Court dismissed civil action 5:03-CV-578 in a Memorandum - Decision and Order dated September 15, 2006.

Assistant District Attorney Diane Adsit, raided the Gilfus family farm in Cayuga County and removed various animals therefrom.  The raid resulted in criminal prosecutions for failure to provide proper sustenance, *see* N.Y. AGRIC. & MKTS. LAW § 353 (McKinney), and convictions, *see* Dkt. No. 10, Ex. C, which were appealed to the Fourth Department, *see* People v. Gilfus, 4 A.D.3d 788, 772 N.Y.S.2d 164 (4th Dept. 2004) (Patricia Gilfus); People v. Gilfus, 4 A.D.3d 789, 771 N.Y.S.2d 452 (4th Dept. 2004) (Richard Gilfus, Jr.); People v. Gilfus, 4 A.D.3d 789, 771 N.Y.S.2d 452 (4th Dept. 2004) (John Gilfus).  The New York Court of Appeals subsequently denied their applications for leave to appeal.  *See* People v. Gilfus, 1 N.Y.3d 628, 777 N.Y.S.2d 26, 808 N.E.2d 1285 (2004) (Patricia Gilfus); People v. Gilfus, 1 N.Y.3d 628, 777 N.Y.S.2d 26, 808 N.E.2d 1285 (2004) (Richard Gilfus, Jr.); People v. Gilfus, 1 N.Y.3d 628, 777 N.Y.S.2d 26, 808 N.E.2d 1285 (2004) (John Gilfus).

In a separate civil forfeiture case, on November 2, 2002, Cayuga County Court Judge Peter E. Corning granted motions by the Finger Lakes Society for the Prevention of Cruelty to Animals of Central New York and the Humane Society of Rochester and Monroe County, to take ownership of the 321 animals including llamas, deer, goats, sheep, pigs, emus, turkeys, monkeys, horses, ponies, donkeys, geese, pigeons, and chickens that had been seized on December 1st and 2nd, 2001.  *See* Dkt. No. 12, Ex. E, Order.  Previously, the above-named Gilfus defendants, joined by Plaintiff Lisa Gilfus and Richard Gilfus, Sr., had entered into a stipulated court order to pay the Finger Lakes Society for the Prevention of Cruelty to Animals $375 per month to house and take care of animals in its custody that were seized from the Gilfus farm.  The Gilfus defendants and Lisa Gilfus and Richard Gilfus, Sr. had further agreed to pay the Humane Society of Rochester and Monroe County $3,500 per month to care for animals in its custody that were seized from the Gilfus farm. *See* id., Order of Forfeiture.

Plaintiffs' Complaint asserts thirteen causes of action claiming violations of Plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, and the Racketeer Influenced Corruption and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO").  Plaintiffs also assert a false imprisonment claim. *See* Dkt. No. 1, Compl. at ¶¶ 114-97.

## DISCUSSION

### I.    Plaintiffs' *Pro Se* Status

The Court recognizes that Plaintiffs filed their action *pro se* and thus holds them to a less stringent standard and liberally construes their pleadings as required by Haines v. Kerner, 404 U.S. 519, 520, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972); *see also* Gonzalez v. Crosby, 125 S.Ct. 2641, 2655, 545 U.S. 524, 524, 162 L.Ed.2d 480 (2005).  *Pro se* status, however, does not insulate litigants from all legal attacks, and *pro se* litigants must comply "with relevant rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quotation marks omitted).

### II.    Duplicative Actions

As the Court alluded to above, Plaintiffs' Complaint mirrors that of Plaintiffs' previously filed civil action: 5:03-CV-578.  Six of the seven plaintiffs from civil action 5:03-CV-578 comprise Plaintiffs in the instant action, while the lone plaintiff from civil action 5:03-CV-578 not to have brought this action, Werner Flier, D.D.S., is among the plaintiffs in a related civil action, 5:04-CV-1368.  The instant action and civil action 5:03-CV-578 also share seven Defendants in common,[3] and

---

[3] Plaintiffs have named the Cayuga County District Attorney's Office, Cayuga County District Attorney James Vargason, Cayuga County Assistant District Attorney Diane Adsit, Cayuga County Sheriff Robert Outhouse, Cayuga County Sheriff's Deputies Paul Benton and Michael Lupo, and Thomas Adessa, in both civil action 5:04-CV-1379 and civil action 5:03-CV-578.  In fact, the only defendant from civil action 5:03-CV-578 that Plaintiffs did not name in civil action 5:04-CV-1379 is the County of Cayuga, New York.

arise from a common event and set of circumstances.  Moreover, Plaintiffs copied, nearly verbatim,[4] the instant Complaint from the complaint they filed in civil action 5:03-CV-578.

"[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000).  Furthermore, "plaintiffs may not file duplicative complaints in order to expand their legal rights."  Id., at 140 (citing Oliney v. Gardner, 771 F.2d 856, 859 (5th Cir. 1985) (affirming dismissal where plaintiff failed to notify court that second complaint was related to first, in which a motion to dismiss was pending); Walton v. Eaton Corp., 563 F.2d 66, 71 (3d Cir. 1977) (plaintiff filed second complaint to evade waiver of jury trial in her first complaint)).  Therefore, the Court *sua sponte* DISMISSES Plaintiffs' complaint as against the Cayuga County District Attorney's Office, Cayuga County District Attorney James Vargason, Cayuga County Assistant District Attorney Diane Adsit, Cayuga County Sheriff Robert Outhouse, Cayuga County Sheriff's Deputies Paul Benton and Michael Lupo, and Thomas Adessa.  The Court now turns to the remaining Defendants

## III.    Rule 12(b)(6)

A dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a dismissal on the merits of the action, a determination that the facts alleged in the complaint fail to state a claim upon which relief may be granted.  *See* Teltronics Services, Inc. v. LM Ericsson Telecomm., Inc., 642 F.2d 31, 34 (2d Cir. 1981).  Such a dismissal is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).  Therefore, the issue before the court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

---

[4]Although Plaintiffs corrected many of the grammatical, point of view and numbering mistakes that plagued their complaint in civil action 5:03-CV-578, Plaintiffs' Complaint is indistinguishable in substance asserting the same thirteen causes of action in nearly identical language, albeit against additionally-named defendants.

offer evidence to support the claims." <u>King v. Simpson</u>, 189 F.3d 284, 287 (2d Cir. 1999). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998) (internal quotations omitted). Accordingly, in order to decide a Rule 12(b)(6) motion, the court must accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the non-moving party. *See* <u>Harris</u>, 186 F.3d at 247. However, a "complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." <u>De Jesus v. Sears, Roebuck & Co.</u>, 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted).

When deciding a Rule 12(b)(6) motion, the court generally limits itself to the facts stated in the complaint, documents attached to the complaint as exhibits, or documents incorporated by reference in the complaint. *See* <u>Dangler v. New York City Off Track Betting Corp.</u>, 193 F.3d 130, 138 (2d Cir. 1999). If the court looks to additional materials, the motion should be converted into a motion for summary judgment. *See* <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 54 (2d Cir. 1999). However, where the court simply refers to supplementary materials, but does not rely to them or use them as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary judgment. *See* <u>id.</u> With this standard in mind, the Court turns to the sufficiency of Plaintiffs' claims, which are plagued by numerous deficiencies.

## IV.     Complaint Fails to Allege Specific Wrongdoing Against Particular Defendants

It is well settled that "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." <u>Morabito v. Blum</u>, 528 F.Supp. 252,

262 (S.D.N.Y. 1981) (noting that the complaint mentions moving defendant only in the caption and a single paragraph of the complaint which identifies his professional title and thus made no allegations that the moving defendant "acted or omitted to act in any particular fashion.") (citations omitted); Sierra v. United States, 1998 WL 599715 at *7 (S.D.N.Y. Sept. 10, 1998).

In their Complaint, Plaintiffs twice reference the CNY SPCA and Humane Society. Plaintiffs identify the CNY SPCA as a "New York State Domestic Not-For-Profit Corporation," see Dkt. No. 1, Compl. at ¶ 21c, and the Humane Society as a "Domestic New York State Not-For-Profit Corporation," see id. at ¶ 21b, and charge that the

> conduct and actions of defendants acting under color of law, in failing to take any steps to protect the Plaintiffs from the unjustified and unconstitutional treatment was at the hands of the . . . [Humane Society and the CNY SPCA] . . . was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause specific and serious bodily, mental and emotion harm, pain and suffering in violation of the Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth, Fifth and Fourteenth Amendment [sic] to the United States Constitution.

Id. at ¶ 117. Plaintiffs' allegations merely parrot statutory language and fail to explain how the CNY SPCA or the Humane Society violated the law or caused any damages to Plaintiffs. Dismissal of Plaintiffs' Summons and Complaint as against the CNY SPCA and the Humane Society is appropriate on this basis.

## V.     Plaintiffs' 42 U.S.C. § 1983 Takings Claims

In the First through Seventh Causes of Action of their Complaint, Plaintiffs allege a violation of rights secured by 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  As an initial observation, it is not entirely clear to the Court whether the CNY SPCA and Humane Society are state actors.  The Second Circuit has commented that "an independent contractor rendering [animal control services] [may be] a state actor within the meaning of § 1983 with respect to the services so provided . . . but that fact does not make the contractor a state actor with respect to its employment decisions."  Sherlock v. Montefiore Medical Center, 84 F.3d 522, 527 (2d Cir. 1996); *but see* Fabrikant v. French, 328 F.Supp.2d 303, 309 (N.D.N.Y. 2004) (Hurd, J.) (finding that Ulster County SPCA is not a state actor and the requisite element of acting under color of law in order to establish a § 1983 claim was not met).  Assuming *arguendo* that the CNY SPCA and the Humane Society are state actors, the Court finds that Plaintiffs have failed to adequately allege a violation of § 1983.

"To establish a takings claim under 42 U.S.C. § 1983, [Plaintiffs] must show (1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation."  HBP Associates v. Marsh, 893 F.Supp. 271, 277 (S.D.N.Y. 1995).  "A federal court . . . cannot entertain a takings claims under § 1983 unless or until the complaining landowner has been denied an adequate postdeprivation remedy."  City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 721, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999); *see also* HBP Associates v. Marsh, 893 F.Supp. 271, 277 (S.D.N.Y. 1995) ("To fulfill the . . . requirement that the taking be 'without just compensation,' [plaintiff] must allege that it exhausted state procedures for obtaining just compensation.").

The State of New York has established remedies for just compensation claims.  New York's Eminent Domain Procedure Law sets forth procedures for obtaining compensation or an action under Article I, Section 7 of the New York State Constitution are available and both of which have been

held to meet the requirements set by the Supreme Court in <u>Williamson County Reg'l Planning</u> <u>Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).  <u>Seventh</u> <u>Regiment Fund v. Pataki</u>, 179 F.Supp.2d 356, 363 (S.D.N.Y. 2002).  As noted above, Lisa Gilfus and others stipulated that they would pay the Finger Lakes Society for the Prevention of Cruelty to Animals and the Humane Society to house and care for the seized animals.  When they failed to render payment, Judge Corning properly awarded custody to the Finger Lakes Society for the Prevention of Cruelty to Animals and the Humane Society.  Lisa Gilfus failed to appeal from Judge Corning's decision and failed to pursue available remedies, which precludes the assertion of the takings claims.  *See* <u>Seventh Regiment Fund</u>, 179 F.Supp.2d at 362.  Dismissal of Plaintiffs' Summons and Complaint as against the CNY SPCA and the Humane Society is appropriate on this basis.

## VI.     **Plaintiffs' Fourth Amendment Claims**

In <u>Sacramento v. Lewis</u>, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court explained that a due process analysis is inappropriate if a claim is encompassed by the Fourth Amendment and added that searches and seizures are specifically covered by the Fourth Amendment.  <u>Id.</u> at 843.  Because Plaintiffs' claim focuses on the seizure of various animals, it is subject to Fourth Amendment analysis.  *See* <u>Van Patten v. City of Binghamton</u>, 137 F.Supp.2d 98, 107 (N.D.N.Y. 2001) (McAvoy, J.) (explaining that killing of plaintiff's dog is a seizure within the meaning of the Fourth Amendment).

The Fourth Amendment, made applicable to the States by the Fourteenth, <u>Ker v. California</u>, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963), provides in pertinent part that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Not all seizures rise to a Fourth Amendment violation.  <u>Soldal v. Cook County, Illinois</u>, 506 U.S. 56, 61-62, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992).  The question is whether this seizure was reasonable under the circumstances.  <u>Id.</u>  The Court must analyze Fourth Amendment claims from an objective viewpoint and take into consideration all relevant facts and circumstances.  The Fourth Amendment generally requires a "careful balancing of government and private interests." <u>Id.</u> at 549.

Here, Plaintiffs' animals were seized pursuant to New York Agriculture and Markets Law § 353 as evidence of a crime, and thus the seizure was constitutionally authorized. *See* <u>Harvey v. Morabito</u>, 2003 WL 21402561, at *6 (N.D.N.Y. June 17, 2003).  Accordingly, dismissal is appropriate as to Plaintiffs' Fourth Amendment claims as to the CNY SPCA and the Humane Society.

**VII.    Plaintiffs' Fourteenth Amendment Due Process Claim**

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  The touchstone of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (citation omitted).  Supreme Court precedent holds that although a person may possess a property interest in an animal, such interest is of a qualified nature subject to the legitimate exercise of the State's police powers.  In <u>Nicchia v. People of State of New York</u>, 254 U.S. 228, 41 S.Ct. 103, 65 L.Ed. 235 (1920), the Supreme Court explained that:

> Property in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right (citations omitted).  Its power to require those who wish to keep dogs to secure licenses from and pay fees to a public officer is also clear.  And when the state in the reasonable conduct of its own affairs chooses to entrust the work incident to such licenses and collection of fees to a corporation created by it for the

express purpose of aiding in law enforcement, and in good faith appropriates the funds so collected for payment of expenses fairly incurred and just compensation for the valuable services rendered, there is no infringement of any right guaranteed to the individual by the federal Constitution.  Such action does not amount to the taking of one man's property and giving it to another, nor does it deprive dog owners of liberty without due process of law.

<u>Nicchia</u>, 254 U.S. at 230-31, 41 S.Ct. at 104.

Here, Plaintiffs do not allege that they were deprived of the opportunity to be heard at a meaningful time and in a meaningful manner, and in fact Lisa Gilfus never appealed from the order of civil forfeiture.  Dismissal of Plaintiffs' Summons and Complaint is appropriate on this basis.

**VIII.  Plaintiffs' False Imprisonment Claim Barred by the Statute of Limitations**

An action to recover for false imprisonment must be brought within one year of the arrest. *See* N.Y. C.P.L.R. § 215(3).  Plaintiffs allege that Defendants falsely imprisoned Timothy Gilfus on December 1, 2001.  Plaintiffs filed their Summons and Complaint alleging false imprisonment on November 29, 2004, or more than a year after the alleged false imprisonment.  Therefore, their claim is time barred and dismissal is appropriate on this basis.

**IX.  Plaintiffs Have Failed to State a Cause of Action Under RICO**

Plaintiffs' Thirteenth Cause of Action does not deviate from its twin in 5:03-CV-578 and fails for the same reasons the Court set forth in its previous opinion.  Section 1964(c) of the RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964.  Because "[c]ivil RICO is an unusually potent weapon . . . courts should strive to flush out frivolous RICO allegations at an early stage in the litigation."  <u>Katzman v. Victoria's Secret</u>, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citations omitted).

*A.    Standing*

To establish a RICO claim, a plaintiff must plead: "(1) the defendant's violation of § 1962; (2) an injury to the plaintiff's business or property; and (3) causation of the injury by the defendant's

violation."  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120-24 (2d Cir. 2003) (citing Commercial

Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001)).  Defendants do

not challenge Plaintiffs' allegations with regard to the first two elements but submit that Plaintiffs

have failed to satisfy causation with respect to their mail and wire fraud allegations which they cite

as predicate acts to their RICO claim.

     The third element is satisfied if "the defendant's injurious conduct is both the factual and the

proximate cause of the injury alleged."  Baisch v. Gallina, 346 F.3d 366, 372 (2d Cir. 2003) (citing

Lerner, 318 F.3d at 120).  The Second Circuit applies a two-prong test to determine the existence

of proximate cause.  First, the plaintiff's injury must result from the defendants' racketeering activity

or commission of the RICO predicate acts.  See Baisch, 346 F.3d at 373.  "[A] plaintiff does not have

standing [under RICO] if he suffered an injury that was indirectly (and hence not proximately)

caused by the racketeering activity."  Id.  Second, the Court must determine "whether the defendants'

acts were 'a substantial factor in the sequence of responsible causation,' and whether the plaintiff's

injury was 'reasonably foreseeable or anticipated as a natural consequence.'"  Baisch, 346 F.3d at

373-74 (quoting Lerner, 318 F.3d at 123).  The Second Circuit has explained that in the context of

an alleged RICO predicate act of mail fraud, the plaintiff must "demonstrate that the defendant's

misrepresentations were relied on" to establish the required causal connection.  Metromedia Co. v.

Fugazy, 983 F.2d 350, 368 (2d Cir. 1992) (citing County of Suffolk v. Long Island Lighting Co., 907

F.2d 1295, 1311 (2d Cir. 1990)).

     Paragraph 197, Subparagraphs (d) and (e) of Plaintiffs' Complaint discussed the alleged mail

and wire fraud.  Plaintiffs, however, fail to allege any reliance upon any misrepresentations sent by

Defendants through either the mails or wires.  Plaintiffs merely state that Defendants used the mails

and wires for the purpose of covering up their wrongful conduct.  Plaintiffs failed to allege that

Defendants even communicated with them through the mails or by the wires.  As the Second Circuit has made clear, such allegations are insufficient to demonstrate causation of Plaintiffs' injuries for purposes of civil RICO.

> **B.**   *Failure to Plead Alleged Predicate Acts With Sufficient Particularity–Rule 9(b)*

Under Rule 9(b),[5] "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted); *see also* Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989) (Under Rule 9(b)'s higher pleading standard, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.").[6]  In addition to the alleged mail and wire fraud, Plaintiffs also allege as predicate acts that Defendants committed fraud to cover up their wrongful conduct through perjury, filing false police reports and providing false affidavits.  Plaintiffs' allegations, however,

---

[5]Rule 9 provides in pertinent part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

[6]Plaintiffs' mail and wire fraud allegations appear to be defective on an additional ground as they arguably fail to meet Rule 9(b)'s requirements.  "To prove a violation of the mail fraud statute, plaintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme."  McLaughlin v. Anderson, 962 F.2d 187, 190-91 (2d Cir. 1992) (citing Schmuck v. United States, 489 U.S. 705, 712, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989); Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)).  Although there is no requirement that the defendant personally mail a letter, the plaintiff must show "(1) that the defendant 'caused' the mailing . . . and (2) that the mailing was for the purpose of executing the scheme or . . . 'incidental to an essential part of the scheme.'"  United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir. 1989) (quoting Pereira, 347 U.S. at 8-9, 74 S.Ct. at 362-63).  "Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme."  McLaughlin, 962 F.2d at 191 (citing Sun Sav. & Loan Assoc. v. Dierdorff, 825 F.2d 187, 196 (9th Cir. 1987) (mail fraud adequately pled where complaint described letters' date, content, origin, destination, and role in fraudulent scheme); Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing complaint that failed to allege how misrepresentations furthered fraudulent scheme)).  Using only the most generic and vague description does Plaintiffs' Complaint specify the allegedly mailed letters' or telephone calls' content, origin, destination, or role in fraudulent scheme.  *See* Dkt. No. 1, Compl. at ¶ 197.

fail to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

As for these additional predicate acts, Plaintiffs generically allege that the "individual defendants engaged [in] and devised a fraudulent scheme to cover-up their wrongful conduct and therein engage in the following pattern of racketeering activity: . . . Making and filing false police reports . . . Providing a false story about what happened . . . [and] testifying falsely and committing perjury before [the] Grand Jury . . . ." Dkt. No. 1, Compl. at ¶ 197(a)-(c).  Plaintiffs, however, have neither specified which of Defendants' statements were fraudulent, nor identified with any specificity who made the allegedly fraudulent statements.  Plaintiffs' Complaint fails to identify any specific person as the one who filed the allegedly false police report or who offered perjured testimony under oath.  Plaintiffs' Complaint also fails to explain why any of Defendants' statements were substantively fraudulent.  As to the alleged false police report, it is only by inference that Plaintiffs' Complaint alleges that any police reports were filed.  Moreover, Plaintiffs' Complaint fails to specify the allegedly fraudulent contents of such reports.  Plaintiffs' claim of a fraudulent police report fails to hurdle Rule 9(b)'s strict pleading guidelines.  The final allegation in support of Plaintiffs' RICO claim is that Defendants testified falsely before a Grand Jury.  Just as with the alleged false police reports, Plaintiffs failed to meet their burden under Rule 9(b) because their Complaint fails to identify the substance of the testimony which allegedly made it fraudulent.

In their Complaint's statement of facts, Plaintiffs maintain that Adessa "swore out a false affidavit that he was a peace officer.  He was not." Dkt. No. 1, Compl. at ¶ 36.  Plaintiffs' Complaint continues by alleging that this affidavit included stale inventory lists and "further defects." Dkt. No. 1, Compl. ¶¶ 37-38.  Plaintiffs, however, failed to note the substance of these further defects, and failed to state who were responsible for these defects.  This is the type of conclusory allegation Rule 9(b) seeks to avoid.  Similarly, Plaintiffs failed to indicate how the inclusion of these stale lists made

the affidavit fraudulent.  Plaintiffs' Complaint does not reveal that Mr. Adessa intended to use these inventory lists for fraudulent purposes.

      *C.*     *Damages*

      In their Complaint, Plaintiffs' submit as a result of Defendants' alleged RICO violation, they "suffered economic loss, including his [sic] inability to pursue his [sic] chosen career, as well as serious physical and emotional injuries . . . As a result of [Defendants' RICO Violations] the Plaintiffs . . . was [sic] made ill, suffered extreme physical, mental suffering and distress, [and] was subjected to overwhelming humiliation . . . ."  Dkt. No. 1, Compl. at ¶¶ 197(e)(iii)-198.  As stated above, Section 1964(c) of the RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964 (emphasis added).

      A plain reading of the RICO statute reveals that Plaintiffs cannot seek damages for physical injury, mental suffering, distress, or humiliation.  *See* 28 U.S.C. § 1964(c).  Although the Second Circuit has not squarely addressed the issue, other Circuits have held that economic damages resulting from personal injuries are not actionable under RICO.  As the Seventh Circuit explained:

> Most personal injuries-loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few-will entail some pecuniary consequences.  Perhaps the economic aspects of such injuries could, as a theoretical matter, be viewed as injuries to "business or property," but engaging in such metaphysical speculation is a task best left to philosophers, not the federal judiciary.  Rather, we must determine if these injuries fall within the framework of § 1964(c) as understood by Congress . . . They do not.

Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992); *see also* Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492, 495 (4th Cir. 1995) (citing Doe and explaining that pecuniary losses flowing from extreme mental anguish do not constitute injury to property); Schiffels v. Kemper Fin. Servs., 978 F.2d 344, 353 (7th Cir. 1992) (explaining that personal injuries such as embarrassment, humiliation, and

emotional distress, do not constitute an injury "to business or property" even if those injuries resulted in a pecuniary loss); <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 918-19 (3d Cir. 1991) (holding that physical and emotional injuries caused by exposure to toxic waste and resulting in medical expenses not compensable as injury to property under § 1964(c)); <u>Grogan v. Platt</u>, 835 F.2d 844, 848 (11th Cir. 1988) (holding recovery not available under RICO for pecuniary losses best understood as part of a personal injury claim, including loss of income, resulting from murder); <u>Drake v. B.F. Goodrich Co.</u>, 782 F.2d 638, 644 (6th Cir. 1986) (finding RICO inapplicable to wrongful death action); <u>Hollander v. Flash Dancers Topless Club</u>, 340 F.Supp.2d 453 (S.D.N.Y. 2004) (explaining that damages to plaintiff's "'business reputation and good will' . . . and 'imperil[ing] his safety, life, liberty and right not to live in fear' . . . , simply are not the type of injuries to 'business or property' that are actionable under RICO.").

Regardless of whether Plaintiffs' damage claim for the "inability to pursue his chosen career" might qualify as an injury to "business or property," the remaining damages sought, serious physical and emotional injuries and humiliation, are not actionable under RICO.  Defendants are entitled to judgment on the pleadings as against Plaintiffs in their cause of action under RICO.

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions and the applicable law, the Court hereby

**GRANTS** Defendants' motion for judgment on the pleadings and **DISMISSES** Plaintiffs' Complaint in its entirety as against all Defendants.

**IT IS SO ORDERED.**

Dated: September 30, 2006
Syracuse, New York

Howard G. Munson
Howard G. Munson
Senior  U.S. District Judge

18